# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| TERRY VON ASTEN, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br> v.<br><br>CREDIT MANAGEMENT LIMITED PARTNERSHIP,<br><br>   Defendant. | Case No.: 20-cv-1175<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed collection efforts into the District.

## PARTIES

3. Plaintiff Terry Von Asten is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301, in that the debt Defendant sought to collect from Plaintiff arose from a consumer transaction with an agreement to defer payment.

6. Defendant Credit Management Limited Partnership ("Credit Management") is a foreign limited partnership with its primary offices located at 6080 Tennyson Parkway Suite 100, Plano, Texas 75024.

7. Credit Management is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Credit Management is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Credit Management is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

10. Credit Management is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103.

**FACTS**

11. On or around December 30, 2019, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "Comcast Cable." A copy of this letter is attached to this complaint as Exhibit A.

12. Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, and household purposes.

13. Upon information and belief, Exhibit A is a form letter, generated by a computer, and with the information specific to Plaintiff inserted by the computer.

2

14. Upon information and belief, Exhibit A is a form debt collection letter, used by Defendant to attempt to collect alleged debts.

15. Upon information and belief, Exhibit A is the first written communication Defendant mailed to Plaintiff regarding this alleged debt.

16. Exhibit A contains language that largely reflects the statutory "validation notice" language that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector send to the consumer along with, or within five days of, the initial communication:

> Validation Notice: Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion of it, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such verification or judgment. If you request of this office in writing within 30 days after receiving this notice this office will provide you with the name and address of the original creditor, if different from the current creditor.

Exhibit A.

17. Exhibit A is a form letter that does not require a separate envelope because it is a "folded self-mailer." *See Sears, Roebuck & Co. v. United States Postal Serv.*, 134 F. Supp.3d 365, 370 (D.D.C. Sept. 30, 2015) ("a folded self-mailer is formed from a single sheet of cardstock that is folded once on the right side (the leading edge), addressed on the front, and sealed to make a letter-sized mailpiece.").

18. Folded self-mailers like Exhibit A are eligible for special low postage rates because of the ease of automated processing. *Sears*, 134 F. Supp. 3d at 371.

19. Folded self-mailers like Exhibit A usually use a gumming agent like glue to seal the mailer, which "prevent[s] the open edges from fanning out and jamming high-speed processing equipment." *Sears*, 134 F. Supp. 3d at 371.

20. The portion of Exhibit A that contains the sending and return addresses and the postage paid stamp also contains the following:

**CONFIDENTIAL**

Exhibit A.

21. The Fair Debt Collection Practices Act prohibits unfair debt collection practices. 15 U.S.C. § 1692f.

22. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

23. 15 U.S.C. § 1692f(8) expressly prohibits:

> (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

24. Like 15 U.S.C. § 1692f(8), Wis. Stat. § 427.104(1)(e) prohibits debt collectors from disclosing "information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information."

25. The Seventh Circuit recently held that the plain language of 15 U.S.C. § 1692f(8) prohibits debt collectors from printing *any* extraneous text in a way that it is visible on an envelope containing a dunning letter. *Preston v. Midland Credit Mgmt.*, No. 18-3119, 2020 U.S. App. LEXIS 1775 *11 (7th Cir. Jan. 21, 2020).

26. *Preston* addressed a dunning letter in an envelope containing the language "TIME SENSITIVE DOCUMENT." *Id.* at *1.

27. The Seventh Circuit held that any extraneous language visible on an envelope containing a debt collection letter violates 15 U.S.C. § 1692f(8) as a matter of law. *Id.* at 11:

> The first sentence of § 1692f prohibits debt collectors from using unfair or unconscionable means to collect a debt. That prohibition is then followed by a specific list of conduct that violates the section. Among those acts specifically listed is the use of "any language or symbol, other than the

4

debt collector's address, on any envelope when communicating with a consumer ... except that a debt collector may use his business name" under prescribed circumstances. 15 U.S.C. § 1692f(8). On its face, the prohibition is clear: use of any language or symbol on an envelope, except for the debt collector's name (if it does not indicate that the collector is in the business of debt collection) and the debt collector's address, violates subsection (8).

*Id.* at 11.

28. In *Preston*, the Seventh Circuit expressly rejected the "benign language exception" followed in some other circuits, holding that Congress created a bright-line rule:

> The statutory language [of § 1692f(8)] does, in fact, prohibit debt collectors from sending communications to consumers in envelopes bearing symbols that are indicative of debt collection. The language of the statute simply draws a clear line to ensure that consumers' rights are not lost in the interpretation of more subtle language. …
>
> In providing certainty, this provision furthers the FDCPA's overall purpose of "eliminat[ing] abusive debt collection practices by debt collectors" and "insur[ing] that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."
>
> In sum, the meaning of § 1692f(8) is clear: When a debt collector communicates with consumers through the mails, it may not use any language or symbol on the envelope except for its business name or address, as long as the name does not indicate that he is in the debt collection business. Turning to the facts here, there is no question that the language "TIME SENSITIVE DOCUMENT" appears on the envelope enclosing a communication to a consumer. It is equally apparent that the language at issue does not fall within the itemized exception set forth in subsection (8): It is not Midland's name nor its address. The inclusion of this phrase thus violates § 1692f(8), and the district court erred in dismissing the claim set forth in Count I of Mr. Preston's complaint.

*Id.* at *15-18; *cf. Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488 (5th Cir. 2004); *Strand v. Diversified Collection Service, Inc.*, 380 F.3d 316 (8th Cir. 2004).

29. As in *Preston*, the "**CONFIDENTIAL**" language on <u>Exhibit A</u> violates the plain language of 15 U.S.C. § 1692f(8). *Preston*, 2020 U.S. App. LEXIS 1775 at *11.

5

30. There is no artificial distinction between language visible on a separate envelope and language visible on a folded self-mailer. The purpose of 15 U.S.C. § 1692f(8) is to prohibit the disclosure of information to third parties. Indeed, the "TIME SENSITIVE DOCUMENT" at issue in *Preston* was actually printed on an internal envelope that was itself visible through the glassine window of the envelope that actually contained the postage. *Preston*, 2020 U.S. App. LEXIS 1775, at *3; *see also, Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303-04 (3d Cir. 2014) (disclosure through window envelope "implicates a core concern animating the FDPCA—the invasion of privacy."); 15 U.S.C. § 1692c(b) (prohibiting debt communication with third parties other than those specified in the statute).

31. Further, it is easy for a debt collector to comply with 15 U.S.C. § 1692f(8) – do not print extraneous information on the envelopes or allow it to show through the glassine windows of envelopes.

### *The FDCPA*

32. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads

a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*, 2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created

a legally protected interest that it deems important enough for a lawsuit."). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

33. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

34. Allowing language indicating that the envelope contains a debt collection letter to be visible to the public injures or risks injury to interests expressly protected by Congress in the FDCPA. As the Seventh Circuit held in *Preston*:

> This approach provides certainty to debt collectors and avoids the problem of having to decide on a case by case basis what language or symbols intrude into the privacy of the debtor or otherwise constitute "an unfair or unconscionable means to collect or attempt to collect a debt." [15 U.S.C.] § 1692f. Congress wrote into the law a bright-line rule with respect to markings on envelopes sent to debtors and authorized the award of damages to debtors if debt collectors violate the plain language of § 1692f(8).

2020 U.S. App. LEXIS 1775 at *17 (quoting *Palmer v. Credit Collection Servs., Inc.* 160 F. Supp. 3d 819, 822-23 (E.D. Pa. 2015)); *see also Douglass*, 765 F.3d at 303-04; *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the

8

debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

### *The WCA*

35. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

36. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

37. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

38. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

39. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

40. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

41. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

42. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon*

10

*v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*; *see also, Schmitz v. Valentine & Kebartas, LLC*, No. 18-cv-15, 2019 U.S. Dist. LEXIS 209489, at *6 (E.D. Wis. Dec. 5, 2019).

43. Wis. Stat. § 427.104(1)(e) states that a debt collector may not: "Disclose or threaten to disclose to a person other than the customer or the customer's spouse information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information. This paragraph does not prohibit the disclosure to another person of information permitted to be disclosed to that person by statute."

44. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

45. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct … in such a manner as can reasonably be expected to threaten or harass the customer."

46. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

47. The Wisconsin Department of Financial Institutions, which is tasked with the regulation of licensed debt collectors, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## **COUNT I - FDCPA**

48. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

49. <u>Exhibit A</u> contains extraneous text, visible on the outside of the envelope through the glassine window, which states: "**CONFIDENTIAL**."

50. Printing extraneous text on an envelope containing a dunning letter or visible on the front of the envelope through a glassine window is an unfair collection practice that violates 15 U.S.C. § 1692f(8) as a matter of law. *Preston*, 2020 U.S. App. LEXIS 1775 *15-18.

51. Defendant violated 15 U.S.C. §§ 1692f and 1692f(8).

## COUNT II – WCA

52. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

53. <u>Exhibit A</u> contains extraneous text, visible on the outside of the envelope through the glassine window, which states: "**CONFIDENTIAL**."

54. Printing extraneous text on an envelope containing a dunning letter or visible on the front of the envelope through a glassine window is an unfair collection practice that violates 15 U.S.C. § 1692f(8) as a matter of law. *Preston*, 2020 U.S. App. LEXIS 1775 *15-18.

55. Defendant violated Wis. Stat. §§ 427.104(1)(e), 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## CLASS ALLEGATIONS

56. Plaintiff brings this action on behalf of two classes.

57. Class I consists of:

> (a) all natural persons in the State of Wisconsin (b) who were sent a collection letters by Defendant Stoneleigh in the form of <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) where the letter was mailed between July 30, 2019 and July 30, 2020, inclusive, and (e) was not returned by the postal service.

58. Class II consists of:

(a) all natural persons in the State of Wisconsin (b) who were sent a collection letters by Defendant Stoneleigh in the form of <u>Exhibit A</u> to the complaint in this action, (c) seeking to collect a debt incurred for personal, family, or household purposes, (d) where the letter was mailed between July 30, 2019 and July 30, 2020, inclusive, and (f) was not returned by the postal service.

59. Each Class is so numerous that joinder is impracticable.

60. Upon information and belief, there are more than 50 members of each Class.

61. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendant violated the FDCPA and/or the WCA.

62. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

63. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

64. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

65. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendants for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) attorneys' fees, litigation expenses and costs of suit; and

13

(e) such other or further relief as the Court deems proper.

Dated: July 30, 2020

                          **ADEMI & O'REILLY, LLP**

By: /s/ John D. Blythin
     John D. Blythin (SBN 1046105)
     Mark A. Eldridge (SBN 1089944)
     Jesse Fruchter (SBN 1097673)
     Ben J. Slatky (SBN 1106892)
     3620 East Layton Avenue
     Cudahy, WI 53110
     (414) 482-8000
     (414) 482-8001 (fax)
     jblythin@ademilaw.com
     meldridge@ademilaw.com
     jfruchter@ademilaw.com
     bslatky@ademilaw.com